```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
In re:                                                    :
                                                          :   Chapter 13
    LOYCE TAMISI,                                         :
                                                          :   Case No. 20-40388-JMM
                              Debtor.                     :
                                                          :
                                                          :
                                                          :
----------------------------------------------------------X
                                                          :
WILMINGTON SAVINGS FUND                                   :
SOCIETY, doing business as Christina Trust,               :
                                                          :
                              Appellant,                  :   24-cv-7944 (BMC)
                                                          :
            - against -                                   :
                                                          :
LOYCE TAMISI,                                             :
                                                          :
                              Appellee.                   :
                                                          :
----------------------------------------------------------X
```

## MEMORANDUM DECISION AND ORDER

**COGAN**, District Judge.

This is an appeal from the Order of the bankruptcy court (Mazer-Marino, B.J.), granting the motion of the debtor-plaintiff for summary judgment in a mortgage lien avoidance adversary proceeding against the mortgage lien holder defendant. It arises out of the heady days of mortgage securitization transactions undertaken shortly before and after the turn of the century when vast quantities of mortgages were pooled, interests in the servicing income from the portfolio sold to investors – and not a lot of attention was paid to maintaining documentation for each individual mortgage within the portfolio.

This case involves one such mortgage that the ultimate portfolio trustee, Appellant Wilmington Savings Fund Society, couldn't properly document despite its predecessor-in-interest having obtained a final, valid foreclosure judgment on it in state court. Wilmington contends that when it presented the mortgage foreclosure judgment in bankruptcy court, the bankruptcy court improperly voided the mortgage lien because Wilmington could not produce the original mortgage note or a legally adequate substitute. At most, Wilmington argues, the bankruptcy court should not have declared the mortgage lien unenforceable, but simply have limited Wilmington's ability to enforce the lien, without prejudice to the right of others who might have an interest in the lien – whoever they may be – to assert that interest.

But contrary to Wilmington's argument, the bankruptcy court did exactly what Wilmington says it should have done. Both its oral ruling and the written Order it entered specifically stated that the lien "is void and unenforceable *by [Wilmington] and its successors or assigns*. . . ."

Moreover, even if the bankruptcy court had done that which Wilmington accuses it of having done, Wilmington has not explained how, on the facts of this transaction, there could be anyone else but it or its successors who have the right to claim under the mortgage foreclosure judgment. It emphasizes that the failure to produce adequate proof of the mortgage note is a "procedural" rather than "substantive" failure of its claim, and that a procedural defect in attempting to enforce a foreclosure judgment is not the same as "voiding" a mortgage in its entirety. But here, since Wilmington (or its successors or assigns) are the only parties legally entitled to assert the state court foreclosure judgment in bankruptcy court, the procedural defect and the substantive ability to enforce the mortgage foreclosure judgment are the same.

Wilmington has not pointed to any economic interest it or anyone else would lose even if the bankruptcy court had voided the mortgage entirely – which, again, it did not do.

Thus, both legally and practically, there is no error in the bankruptcy court's decision. Its Order is therefore AFFIRMED.

## STANDARD OF REVIEW

This Court has jurisdiction over the bankruptcy court's Order as a final order in an adversary proceeding under 28 U.S.C. §§ 157 and 1334. My review of the bankruptcy court's Order granting summary judgment is *de novo* as to its legal conclusions and for clear error as to its factual determinations. See In re Hyman, 502 F.3d 61, 65 (2d Cir. 2007).[1]

## BACKGROUND

In 2006, the debtor-appellee Loyce Tamisi obtained a $480,000 mortgage loan from Argent Mortgage Company, secured by residential property in Far Rockaway, Queens. Within three days, Argent assigned its interest in the mortgage and note to DLJ Mortgage Capital, Inc., which had become well known for acquiring and servicing mortgage portfolios for the benefit of investors in securitized mortgage trusts. By 2007, the mortgage went into default, and DLJ instituted a foreclosure action in New York County Supreme Court. It took "only" 12 years from then to get a final Judgment of Foreclosure.

Two months after the foreclosure judgment became final, in 2020, Tamisi filed a Chapter 13 petition in the Eastern District of New York, staying the sale of the property. Wilmington, as assignee of DLJ, filed a proof of claim based on the foreclosure judgment. Tamisi objected on the ground, *inter alia*, that Wilmington had not produced the original mortgage note. There's a

---

[1] Technically, since the bankruptcy court's written Order after its oral ruling on the motion was a final disposition, it should have been titled as a "Judgment" under Bankruptcy Rule 7058. But I can treat it as if it had been properly titled. See Roberts v. Bennaceur, 658 F. App'x 611, 618-19 (2d Cir. 2016).

procedure under state law when that happens, requiring the mortgagee to produce what is known as a "Lost Note Affidavit" or "LNA."  But an LNA has particular requirements as to specificity, and in 2022, the bankruptcy court held, for reasons not material here, that Wilmington had not met them and therefore lacked standing to maintain a proof of claim in bankruptcy court.  Based on the lack of standing, the bankruptcy court expunged the claim, and the district court affirmed, finding, like the bankruptcy court, that without an adequate LNA, Wilmington lacked standing to maintain its claim.  Wilmington Savings Fund Society, FSB v. Tamisi, No. 22-cv-1982, 2023 WL 2561787 (E.D.N.Y. March 17, 2023) (the "Prior Litigation").  Wilmington did not appeal to the Second Circuit.

Having expunged the claim for lack of standing, Tamisi sought to press his advantage by commencing an adversary proceeding in the bankruptcy court to obtain a determination that the lien was void.  On cross-motions for summary judgment, the bankruptcy court granted some, but not all, of the relief Tamisi requested.  The issue at oral argument was whether the mortgage lien was void *in totum* or merely void to the extent Wilmington, due its lack of standing, sought to enforce it.  The bankruptcy court was careful to distinguish between those issues in its oral ruling:

> Defendant is correct, though, that there may be other entities that have standing to enforce the mortgage that are not named as defendants in this adversary proceeding, and it would violate the due process rights of those unknown parties to void the lien on the premises in toto.
>
> * * *
>
> Under 506(d)(2), this Court may not avoid a lien by a party that did not file a proof of claim and for those reasons, because of the due process concerns and 506(d)(2), the Court's order granting summary judgment in favor of plaintiff and denying defendant's motion for summary judgment, will be limited and will declare that the mortgage lien on the premises will be void only as to the claimed interests of the defendant and its successors and assigns.

4

Consistent with this oral ruling, the bankruptcy court's written Order made it clear that only Wilmington and its successors were precluded from claiming under the mortgage in the bankruptcy case or any future proceeding. The bankruptcy court "ORDERED, pursuant to 11 U.S.C. § 506(d), [that] the mortgage granted by [Tamisi] in favor of Argent … is void and unenforceable *by Defendant* [i.e., Wilmington], *and its successors and assigns*. . . ." (Emphasis added.)

Wilmington moved for reconsideration under Bankruptcy Rule 9023 "to make clear that the Order . . . does not void the entire mortgage lien. . . ." The bankruptcy court orally denied the motion, stating as follows:

> [T]he mortgage lien that Wilmington has is void and unenforceable. It's void because they didn't have the power to – they don't have the note. . . .
>
> [A]gain, if Argent wants to come here and tell me why I need to revise it and protect them, I'll do that. If DLJ wants to do that, that's fine. But I think it's clear as to Wilmington. . . . So, again, if there's a third party who wants to come in and say their rights are impaired, they have the right to enforce, that's fine with me. But I'm leaving the order as is.

The bankruptcy court entered a written Order summarily denying the reconsideration motion.

Wilmington has appealed both the Order granting summary judgment to Tamisi and the Order denying its motion for reconsideration.

## DISCUSSION

Wilmington has advanced three points of error as to the bankruptcy court's rulings: (1) the bankruptcy court's Order was not a substantive determination as to the validity of the mortgage; (2) the Order violates due process; and (3) the Order is an improper collateral attack on the state foreclosure judgment. The first point is true but irrelevant; Wilmington lacks standing to raise the second; and the third is both wrong and barred by law of the case.

I.  "Substantive v. "Procedural"

Wilmington's main point as to "substance" versus "procedure" is irrelevant because the bankruptcy court could not have been clearer that it was only barring Wilmington's claim on procedural grounds – the failure to present the note or an adequate LNA. If someone else has those instruments and the right to enforce the mortgage foreclosure judgment (other than through assignment from Wilmington, because a Wilmington assignee could not receive more than Wilmington has to give), the bankruptcy court left that unidentified entity free to do so. It is like a dismissal for lack of subject matter jurisdiction based on standing. The claim can be brought again by another party where that other party would have standing. See Rent Stabilization Ass'n of New York v. Dinkins, 5 F.3d 591, 594 n.2 (2d Cir. 1993) (standing inquiry is plaintiff specific).

It appears that Wilmington is concerned because in the recital paragraphs of its Order, the bankruptcy court set forth the documents listed on the docket that led to the entry of the Order – specifically, Tamisi's motion "seeking judgment declaring the mortgage lien on Plaintiff's real property is void." Wilmington apparently would have preferred the description of the document to have been Tamisi's motion "seeking judgment declaring the mortgage lien void as to Wilmington Savings Fund Society, FSB but leaving anybody else free to enforce that lien." Of course, Tamisi could have framed her motion for summary judgment in any way she wanted but that wouldn't change what the bankruptcy court ordered. The decretal paragraph in the Order, not to mention the bankruptcy court's statements in its oral rulings both on the summary judgment motions and on the motion for consideration, said exactly what Wilmington wanted it to say – that the mortgage "is void and unenforceable *by [Wilmington] and its successors and*

6

*assigns*. . . ." And it is axiomatic that the decretal paragraph of an Order controls over any document description in the recital paragraphs of an Order. See In re Cont'l Vending Mach. Corp., 491 F.2d 813, 820 (2d Cir. 1974) ("decretal part of order" controlled over "the order's prefatory recital").

Thus, Wilmington's argument that "Section 506(d) only empowers the bankruptcy court to void liens supporting disallowed claims if it judges those liens to be invalid in substance," In re Santoli, 631 B.R. 827, 830 (Bankr. S.D.N.Y. 2021), aff'd, No. 21-cv- 8545, 2022 WL 5435164 (S.D.N.Y. Oct. 7, 2022) (cleaned up), has no applicability. The bankruptcy court did not completely void the lien; it declared the lien "void and unenforceable by [Wilmington] and its successors and assigns. . . ."

Santoli and the other cases upon which Wilmington relies are correct. And all are consistent with what the bankruptcy court held here when it stated that its Order would "declare that the mortgage lien on the premises will be void only as to the claimed interest of the defendant and its successors and assigns," which is indeed the language that its Order used.

Unfortunately, Tamisi has muddled rather than clarified the waters by seeking to conflate the issue of whether Wilmington has standing to enforce the mortgage lien with whether there is a mortgage lien at all. Under the view she has expressed on this appeal, there is no mortgage lien; she got a $480,000 mortgage loan scot-free and interest-free nearly twenty years ago and she now holds the property free and clear of any mortgage lien at all. Maybe she does and maybe she doesn't, but that is not what the bankruptcy court has ordered. Again, it simply held that Wilmington has no standing to enforce the lien. But Wilmington is not entitled to relief on this appeal simply because Tamisi has overstated the effect of the bankruptcy court's Order.

7

It is, however, possible to see why Tamisi has sought to conflate the issues that the bankruptcy court clearly separated and thereby put the fear of God into Wilmington. Now that it has been established in the Prior Litigation that Wilmington has no standing to receive a distribution under its mortgage claim, the question becomes whose interest, exactly, is Wilmington trying to protect? It doesn't say. It seems unlikely that it can be Argent or DLJ, because those entities received full consideration for assigning their rights in the mortgage and note to Wilmington. (Again, the bankruptcy court made it clear that if Argent or DLJ do magically appear with a legally enforceable interest, they could assert it.) And it can't be anyone to which Wilmington would assign its interest because, as noted above, any such hypothetical assignee can't get any more standing than Wilmington has to give. In addition, it should be noted that in its prior litigation with Tamisi, there was extensive discovery, so that, presumably, if Wilmington could have found the mortgage note with Argent or DLJ or gotten an attestation from either of them adequate to show what happened to the note for purposes of generating an LNA, Wilmington would have done so.

It all raises the question of why Wilmington is litigating this case to death. The only economic value of which I can conceive in the position it has taken is that with some different form of order issued by the bankruptcy court, perhaps a title company would not insure the title if Tamisi tries to sell, and Wilmington could leverage some payment from Tamisi or a buyer for a surrender of any potential interest. Or, conversely, perhaps it fears that under the current Order, a title company will insure the title without an exception, and Wilmington wants to prevent that to avoid losing whatever little leverage it might have.

If that is what is going on, and neither side has said that it is, it is not material to the issue on this appeal. I do not know what a title company will or will not insure, but all that matters on

8

this appeal is that the bankruptcy court correctly separated the issues, held only that Wilmington has no standing to enforce the state court foreclosure judgment, and that there is no legal error in the Order because that is what it says.

## II.     The Order as a "Violation of Due Process"

For similar reasons, Wilmington's remaining arguments fail. It argues that "The Order Voiding the Mortgage Lien Violates Due Process." But whose due process rights are being violated? Certainly not Wilmington's, which is currently on its second trip up the appellate ladder. And as noted above, not only have Argent and DLJ appeared by all rights to have assigned their interest, leaving it with Wilmington and thus having no property interest of which they can be deprived, but the bankruptcy court has made it clear that if that is not the case, they will be free to say so. In fact, Wilmington asserts that "upon closure of the bankruptcy proceedings DLJ or the current Note holder could proceed with the enforcement of the Foreclosure Judgment," which makes Wilmington's argument about a due process violation entirely circular.

Wilmington chides Tamisi for not having named DLJ (and maybe Argent?) in the adversary proceeding, but it would have been strange indeed to name parties through whom Wilmington itself claims to hold the entire interest in the mortgage foreclosure judgment. Neither was a required party under Bankruptcy Rule 7019, and Wilmington never claimed otherwise.

Wilmington's constitutional argument fails for the same reason its "procedural" argument fails – the bankruptcy court's Order is preclusive only as to Wilmington and its successors.

### III.    Collateral Attack

Finally, Wilmington asserts that the bankruptcy court's Order is a collateral attack on the state court foreclosure judgment. It lumps together an assortment of preclusion theories in an effort to substantiate that argument: the Rooker-Feldman doctrine (District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923)); *res judicata*; and/or collateral estoppel.

First, as with its other arguments, Wilmington fails because – at the risk of beating a dead horse – the bankruptcy court's Order is not attacking the state court foreclosure judgment. It merely holds that Wilmington has no standing to enforce it. If some other entity does (other than an assignee of Wilmington), they are welcome to do so. The state court judgment is as valid now as it was when DLJ obtained it. It simply cannot be enforced by Wilmington because Wilmington lacks standing.

Second, maintaining the horse metaphor, the preclusion doctrines Wilmington invokes are each horses out of the barn. In the Prior Litigation, Wilmington specifically raised the Rooker-Feldman doctrine, contending the bankruptcy court's standing ruling was a collateral attack on the state foreclosure judgment. The district court rejected that: "[T]he Rooker-Feldman doctrine does not apply here, where the Bankruptcy Court did not exercise jurisdiction in a way that would result in reversal or modification of any state court judgment." 2023 WL 2561787, at *6 (citation omitted). Wilmington chose not to appeal that ruling in the Prior Litigation and cannot get another bite of the apple here. See Johnson v. Maximus Servs. LLC, No. 22-cv-2935, 2023 WL 5612826, at *3 (E.D.N.Y. Aug. 30, 2023) (dismissing lawsuit because plaintiff had already raised, and lost on, the same legal issue in a different case (citing Smith v. City of New

10

York, No. 15-cv-4493, 2016 WL 4574924, at *2, 6 (S.D.N.Y. Sept. 1, 2016)); Glendora v. Dolan, 871 F. Supp. 174, 176 (S.D.N.Y.), aff'd., 48 F.3d 1212 (2d Cir. 1994) ("Where a litigant is convinced that an error was made, the remedy is to appeal or to seek reconsideration or amendment of the ruling."). And Rooker-Feldman's close cousins, *res judicata* and collateral estoppel, could readily have been raised in the Prior Litigation and thus are also precluded here. See Nash v. Bowen, 869 F.2d 675, 679 (2d Cir. 1989).

Perhaps if the bankruptcy court's Order now under review had done something more than hold that Wilmington lacked standing to pursue the foreclosure judgment, then it could raise these arguments again. But since it does not, the ruling in the Prior Litigation constitutes law of the case.

## CONCLUSION

The Order of the bankruptcy court is AFFIRMED.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
       May 13, 2025